**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERALE RAWLES | **HONORABLE KAREN M. WILLIAMS**<br><br>No. 1:23-cr-291-KMW<br><br>**OPINION** |

**WILLIAMS, District Judge.**

**THIS MATTER** comes before the Court upon pro se Defendant Gerale Rawles's ("Defendant") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. No. 64.) Defendant seeks a reduction of his 84-month custodial sentence to time served, followed by supervised release with the first six months on home confinement. (*Id.* at 1, 6–7.) The Government opposes the motion. (Gov't Opp., Dkt. No. 68.)

For the reasons set forth below, Defendant's motion will be **DENIED**.

## I. BACKGROUND

On April 12, 2023, Defendant pleaded guilty to a one-count Information charging possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (*See* Information, Dkt. No. 35; Plea Agreement, Dkt. No. 38.) Defendant acknowledges that the offense involved approximately 444.5 grams of methamphetamine. (*See* Presentence Investigation Report ("PSR") ¶ 26; Plea Agreement at 7.)

According to the PSR, Defendant arranged for a package containing the drugs to be delivered to an address other than his own to conceal his connection to the shipment. (PSR ¶¶ 16-18.) He was arrested after accepting the package and securing it in his residence. (*Id.* ¶ 19.)

Subsequent laboratory testing showed the methamphetamine was approximately 99 percent pure. (*Id.* ¶ 19.)

On December 4, 2024, the Court sentenced Defendant to 84 months' imprisonment and three years of supervised release. (Judgment of Conviction, Dkt. No. 61.) Defendant's sentence reflected a downward variance based on Defendant's documented medical conditions, time on pretrial release, age, and family ties and responsibilities. (Gov't Opp., Exhibit A, Statement of Reasons at 3.) Defendant likewise acknowledges that the Court considered many of his medical issues when imposing sentence. (Dkt. No. 64 at 6.)

Defendant filed the present motion on March 26, 2026. (*Id.*) He relies on his medical conditions, family circumstances, and rehabilitation, including his conduct during approximately five years of pretrial supervision. Defendant states that he remained on pretrial release from 2019 until his self-surrender, incurred no violations, obtained a commercial driver's license, and secured Social Security disability benefits. (*Id.* at 2, 5.) He argues that this period of compliance, together with his time in custody, demonstrates that the purposes of sentencing have been satisfied. (*Id.* at 6.)

As to his health, Defendant identifies asthma, resistant hypertension, degenerative disc disease, type II diabetes with retinopathy, hyperlipidemia, sleep apnea, polycythemia vera, microscopic blood in his urine, neuropathy, low testosterone, morbid obesity, and hidradenitis suppurativa. (*Id.* at 3.) He argues that the cumulative effect of these conditions, coupled with allegedly inadequate Bureau of Prisons ("BOP") staffing, care, and medications, warrants release. (*Id.*) He maintains that the Court could not have anticipated the deficiencies in his prison medical care at sentencing. (*Id.* at 6.)

Defendant also seeks release to assist his wife in raising four of his children in North Carolina, provide financial support, and care for his aging mother and stepfather. He states that his brother currently contributes $500 per month toward his child-support obligations. (*Id.* at 3–4.) His mother's supporting letter describes another daughter's separation anxiety, trauma, therapy, and reported self-harm behaviors following Defendant's incarceration. (*Id.* at 16–17.) Defendant also submitted a supporting letter from his wife describing her significant mental-health challenges and treatment with medication. (Dkt. No. 64-1 at 2.)

Regarding rehabilitation, Defendant represents that he has maintained an impeccable institutional disciplinary record, completed numerous programs, and served in the Hospital/Inmate Companion Program, assisting inmates with illnesses and injuries. (Dkt. No. 64 at 5.) He submits an education transcript identifying completed courses. (*Id.* at 15.) His proposed release plan includes residing with his wife and four youngest children, reinstating disability benefits, working as a commercial truck driver to the extent medically permissible, obtaining outside medical treatment, and completing any programs required by the Court or Probation. (*Id.* at 6–7.)

The Government concedes that Defendant satisfied the administrative exhaustion requirement. (Gov't Opp. at 3.) It argues, however, that Defendant has not established extraordinary and compelling reasons for release and that the § 3553(a) factors independently require denial. The Government relies on Defendant's continuing medical treatment, the absence of a demonstrated caregiving emergency, the seriousness of his offense, his extensive criminal history, and the substantial portion of his sentence remaining. (*Id.* at 7–14.)

## II. LEGAL STANDARD

Section 3582(c)(1)(A) permits a defendant to seek compassionate release after fully exhausting administrative rights to appeal the BOP's failure to bring a motion on his behalf or after

30 days have elapsed from the warden's receipt of his request, whichever is earlier. Here, the warden's denial, attached to the motion, addresses a request dated January 29, 2026, and Defendant filed his motion on March 26, 2026. (Dkt. No. 64 at 14.) Because the Government agrees that exhaustion is satisfied, the Court proceeds to the merits. (Gov't Opp. at 3.)

A court may reduce a term of imprisonment under § 3582(c)(1)(A)(i) if extraordinary and compelling reasons warrant a reduction, the reduction is consistent with applicable Sentencing Commission policy statements, and the applicable factors under 18 U.S.C. § 3553(a) support relief. Compassionate release remains discretionary. A court may deny relief based on the § 3553(a) factors even when extraordinary and compelling reasons exist. *United States v. Pawlowski*, 967 F.3d 327, 329–31 (3d Cir. 2020). Defendant must demonstrate that the requirements for the relief he seeks are satisfied.

The applicable policy statement, U.S.S.G. § 1B1.13, expressly addresses defendant-filed motions and requires, among other things, a determination that the defendant is not a danger under 18 U.S.C. § 3142(g). Section 1B1.13(b) identifies qualifying circumstances involving medical conditions, age, family needs, abuse, and other comparably grave circumstances. Rehabilitation alone is insufficient, although it may be considered with other circumstances. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); *United States v. Stewart*, 86 F.4th 532, 536 (3d Cir. 2023). Circumstances need not have been unforeseeable at sentencing. U.S.S.G. § 1B1.13(e).

The § 3553(a) factors include the nature and circumstances of the offense; the defendant's history and characteristics; the need for just punishment, deterrence, public protection, and effective medical care or other treatment; the available sentences and advisory Guidelines; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). The time remaining on a

defendant's sentence is relevant to whether an immediate reduction would satisfy those purposes. *Pawlowski*, 967 F.3d at 330–31.

## III. DISCUSSION

The Court first considers the § 3553(a) factors, which independently warrant denial even assuming Defendant's circumstances are extraordinary and compelling. The Court then addresses his medical and family circumstances, rehabilitation, and the cumulative basis for his request. Although Defendant presents meaningful mitigating considerations, they do not justify the substantial reduction he seeks.

### a. <u>The Section 3553(a) Factors</u>

The nature and circumstances of the offense weigh against reducing Defendant's sentence to time served. Defendant possessed approximately 444.5 grams of methamphetamine with intent to distribute it. (Dkt. No. 64 at 6.) This was a serious distribution offense involving a substantial quantity of controlled dangerous substances. The Government further describes deliberate efforts to conceal Defendant's connection to the shipment by arranging delivery to another address. (Gov't Opp. at 12; *see* PSR ¶¶ 10-19.) The Court finds that a substantial custodial sentence remains necessary to reflect the seriousness of that conduct, provide just punishment, and afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(A)–(B).

Defendant's criminal history reinforces those concerns. Defendant acknowledges a lengthy record but attributes much of it to poverty, addiction, and efforts to support his children. (Dkt. No. 64 at 1–2.) The Government reports eleven felony convictions involving drug offenses, theft-related offenses, resisting arrest, and shoplifting, along with numerous municipal convictions, and identifies prior terms of incarceration and probation. (Gov't Opp. at 13 (citing PSR ¶¶ 38-57).) The Court considers Defendant's account of the circumstances surrounding his prior conduct. The

relevant concern is the persistence of criminal conduct despite earlier sanctions, which bear specific deterrence and protection of the public. Defendant's financial hardship provides context for his conduct but does not diminish the seriousness of possessing this quantity of methamphetamine for distribution.

The Court also gives weight to Defendant's successful pretrial supervision. Five years without reported violations is a meaningful period of compliance. During that time, Defendant obtained a commercial driver's license, secured disability benefits, maintained family relationships, and pursued lawful means of support. (Dkt. No. 64 at 2, 5–6.) Those facts support his assertion that he has begun to change his behavior. But the original sentence already accounted for his time on pretrial release and other mitigating circumstances. (*See* Statement of Reasons at 3.) They retain weight in the present analysis, but do not justify replacing the remaining custodial term with supervised release.

Defendant further suggests that his time on pretrial supervision should be combined with his imprisonment to satisfy the custodial sentence. (Dkt. No. 64 at 6.) Supervision in the community, however, does not serve the same punitive function as imprisonment. Nor does release on bail constitute "official detention" for sentence-credit purposes, even where release conditions substantially restrict a defendant's liberty. *Reno v. Koray*, 515 U.S. 50, 62–65 (1995). The Court therefore considers Defendant's pretrial conduct as favorable evidence of his history and characteristics, rather than treating those years as years of imprisonment already served.

Defendant's conduct since entering BOP custody also favors him. For purposes of this motion, the Court credits his representation that he has maintained a clear disciplinary record. His coursework and service assisting other inmates are constructive efforts that deserve recognition. (Dkt. No. 64 at 5, 15.) The Hospital/Inmate Companion Program, in particular, reflects a

willingness to accept responsibility for the needs of others. The Court considers these developments as evidence of rehabilitation, rather than rejecting them merely because institutional compliance is expected. Nevertheless, weighed against the offense, Defendant's criminal history, and the limited portion of the sentence completed, these efforts do not establish that continued incarceration is unnecessary at this time.

The Court has considered Defendant's health, the burdens on his family, and his proposed release plan. His chronic conditions may make incarceration more difficult, and his daughter's reported self-harm is especially concerning. His proposed residence, benefits, lawful employment, medical treatment, and family support provide a framework for eventual reintegration. (*Id.* at 3–7, 16–17.) These considerations weigh in favor of leniency. The Court does not infer that Defendant will reoffend simply because he faces financial pressures or child support obligations. The concern about deterrence and public protection rests on his actual offense and repeated prior criminal conduct, considered alongside his more recent compliance.

The extent of the requested reduction remains substantial. Defendant has served approximately twenty months of his 84-month sentence. (Gov't Opp. at 3.) Thus, immediate release would eliminate most of Defendant's custodial term. The Court does not impose a minimum percentage of time that must be served before compassionate release may be granted. Rather, the remaining term is relevant here because reducing a seven-year sentence to time served would insufficiently reflect the seriousness of Defendant's offense and the need for deterrence. *See Pawlowski*, 967 F.3d at 330–31.

Defendant's proposal for six months of home confinement as a condition of supervised release does not alter that conclusion. (Dkt. No. 64 at 1.) His motion seeks a judicial sentence reduction followed by supervised release with restrictive conditions. Section 3582(c)(1)(A)

permits that form of relief when its requirements are met. But the proposed condition would not provide adequate punishment and deterrence in place of the substantial custodial term remaining in this case. After weighing the favorable circumstances as well as the factors supporting continued imprisonment, the Court concludes that the § 3553(a) factors independently require denial. Because that conclusion is dispositive, the Court need not make a separate determination under § 1B1.13(a)(2).

**b. <u>Extraordinary and Compelling Reasons</u>**

*i. Medical Circumstances*

Defendant's numerous conditions merit careful consideration, but their seriousness alone does not establish eligibility for compassionate release. The relevant medical provisions address terminal illness; an unrecoverable condition substantially impairing self-care in prison; and required long-term or specialized care that is unavailable, creating a risk of serious deterioration or death. U.S.S.G. § 1B1.13(b)(1)(A)–(C). The Court considers Defendant's conditions together, as he requests, rather than requiring one diagnosis independently to justify release.

Defendant has not demonstrated that his conditions substantially diminish his ability to care for himself in a correctional facility. His motion identifies numerous diagnoses and asserts declining health, but does not explain how their combined effects substantially impair his ability to perform necessary daily activities. (Dkt. No. 64 at 3.) The warden's response attached to the motion reports that the medical review found no functional impairments and that Defendant could perform activities of daily living. (*Id.* at 14.) That administrative assessment does not control this Court's decision. It does, however, address the relevant functional question, and Defendant's submissions do not supply specific contrary evidence of an inability to provide self-care.

Defendant's own description of his participation in the Hospital/Inmate Companion Program and his institutional courses also indicates continuing functional ability. (*Id.* at 5, 15.) BOP Medical Records additionally report that Defendant received treatment after playing softball in March 2026 and after exercising in April 2026. (Gov't Opp., Ex. C, BOP Medical Records at 22-27, 30-33.) Participation in work or recreation does not prove that an inmate is free of serious illness or pain. Here, however, those activities are consistent with the absence of a demonstrated substantial impairment of self-care. Even accepting all the conditions Defendant lists, including polycythemia vera, he has not established terminal illness or the functional limitation required by the applicable provisions.

Defendant likewise has not shown that necessary long-term or specialized care is being withheld and that its absence puts him at risk of serious deterioration or death. His assertions about understaffing and deficient BOP care are general. He does not identify a prescribed treatment that is unavailable, an unfulfilled recommendation for specialist care, or a particular delay that places him at the required risk. (Dkt. No. 64 at 3, 6–7.) A preference for outside medical care and the expectation of insurance coverage upon release do not, without that individualized showing, satisfy § 1B1.13(b)(1)(C).

BOP records further addresses those concerns. They report prescriptions for asthma, hypertension, and diabetes; provision of a CPAP machine, glucose meter, back brace, and other devices; a cervical MRI in February 2026; treatment of cellulitis; and adjustments in insulin and treatment for iron deficiency. (BOP Medical Records at 6-13, 43-46, 96-97.) The Court does not treat that account as proof that every condition is optimally managed. The dispositive deficiency is that Defendant has not demonstrated the specific unmet medical need and associated serious risk required for relief.

The Court does not reject Defendant's medical circumstances simply because many existed at sentencing. Section 1B1.13(e) permits consideration of circumstances known or foreseeable at that time. The question is whether his present circumstances satisfy the applicable standard. On the submissions described above, Defendant's cumulative diagnoses and generalized assertions of deficient care do not establish that standard. The Court finds that Defendant's medical circumstances therefore do not provide an extraordinary and compelling reason for the requested reduction.

*ii. Family Circumstances*

Defendant's family circumstances are sympathetic, but the evidence does not establish the qualifying caregiving need. The policy statement addresses loss or incapacitation of a child's caregiver and incapacitation of a spouse or parent where the defendant is the only available caregiver, as well as comparable circumstances involving other qualifying individuals. U.S.S.G. § 1B1.13(b)(3)(A)–(D). Defendant's desire to assist his aging parents does not establish that either parent is incapacitated or that he alone can provide necessary care. His motion describes advancing age and their wish for his assistance during their later years, rather than an inability to care for themselves. (Dkt. No. 64 at 3.)

Nor has Defendant established incapacitation of his wife or loss of the caregiver for the four children living with her. His motion describes the difficulty she faces raising the children and his wish to share those responsibilities. (*Id.* at 4.) Her letter describes significant mental-health challenges and medication. (Dkt. No. 64-1 at 2.) Mental illness can impair caregiving ability, and treatment with medication does not itself establish that a person remains capable of caregiving. Here, however, the information presented does not demonstrate that Defendant's wife is unable to provide care or that Defendant is the only available caregiver for an incapacitated spouse.

The Court separately considers the letter concerning Defendant's daughter. Defendant's mother reports that Defendant had been the child's primary parent, that her mother has been absent, and that separation from Defendant has led to trauma, separation anxiety, therapy, and self-harm behaviors. (Dkt. No. 64 at 16.) The Court does not minimize these reports or equate self-harm with routine sadness caused by separation. Nevertheless, the letter also describes the grandparents' continuing efforts to support the child. (*Id.* at 16–17.) It does not establish the death or incapacitation of her current caregiver, or a comparable circumstance requiring Defendant as the only available caregiver. The reported distress is serious, but the present submission does not demonstrate that existing caregivers and treatment are unable to meet her needs or that Defendant's release is the only available means of providing necessary care.

Defendant's financial obligations also do not establish a qualifying family circumstance. His brother's financial contributions demonstrate some support, but financial assistance does not itself prove that the brother is an available physical caregiver. (*Id.* at 4.) Therefore, the Court does not rely on that inference. Rather, Defendant has not established incapacitation or the required lack of available care. These family circumstances are also considered below as part of the combined request for relief.

*iii. Rehabilitation and the Combined Circumstances*

Defendant correctly recognizes that rehabilitation alone is insufficient but asks the Court to consider it with his other circumstances. (*Id.* at 4–5.) The Court has done so. His successful pretrial supervision, acquisition of a commercial driver's license, institutional disciplinary record, coursework, and service to other inmates all demonstrate Defendant's rehabilitative progress. They do not independently establish an extraordinary and compelling reason. *See Stewart*, 86 F.4th at 536; 28 U.S.C. § 994(t).

The Court also considers whether the cumulative circumstances qualify under the other-reasons provision, § 1B1.13(b)(5). Failure to meet a specifically listed category does not end that inquiry. Defendant combines multiple chronic illnesses, concerns about prison medical care, significant family burdens, his daughter's reported mental-health crisis, substantial pretrial compliance, and constructive institutional conduct. Taken together, these circumstances warrant attention and support his eventual return to his family. But the submission does not establish a circumstance of comparable gravity involving unmanageable illness, necessary treatment that is unavailable, a caregiving gap that he alone can fill, or other circumstances of similar gravity. Therefore, the Court finds that the combined circumstances do not establish extraordinary and compelling reasons for release. Even if they did, the Court would deny the requested reduction for the independent reasons identified in its § 3553(a) analysis.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Dkt. No. 64) is **DENIED**. An Order consistent with this Opinion will be entered.

Dated: October 13th, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE